UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

JOHN DAWOOD DALALY,

        Defendant.
_____/

No. 1:23-CR-40

Hon. Jane M. Beckering
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between John Dawood Dalaly and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>Plea to Information</u>. Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to Count 2 of the Felony Information charging him with payment of a bribe, in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

2.     <u>Defendant Understands the Crime</u>. In order for Defendant to be guilty of violating Title 18, United States Code, Sections 666(a)(2) and 2 as alleged, the following must be true: (1) Defendant gave a thing of value to another person (or aided and abetted giving a thing of value to another person); (2) Defendant did so corruptly, that is, with the intent to influence or reward an agent of a State government or any agency thereof in connection with some business, transaction, or series of transactions of the government; (3) The business, transaction, or series of transactions involved something of a value of $5,000 or more; (4) the State government or agency, in the one-year period before or after Defendant gave, offered, or agreed to give a thing of value to another person or entity, received benefits of more than $10,000 from any federal

program involving a grant, contract subsidy, loan, guarantee, insurance or other form of federal assistance.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3. <u>Defendant Understands the Penalty</u>.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 666(a)(2) and 2, is the following:  10 years of imprisonment; 3 years of supervised release; a fine of $250,000; and a mandatory special assessment of $100.  Defendant agrees to pay the special assessment at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that Defendant lacks the ability to pay.

4. <u>Supervised Release Defined</u>.  Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements.  Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5. <u>Financial Disclosure Statement and Cooperation in Continuing Financial Investigation</u>.

    a. Defendant agrees to cooperate fully in the investigation of the amount of the fine; the identification of funds and assets in which he has any legal or equitable interest to be applied toward the fine; and the prompt payment of the fine.  Defendant also agrees that the full fine amount shall be considered due and payable immediately.  Defendant understands that if the Court imposes a schedule of payments, that schedule is merely Defendant's minimum obligation and neither

    the only method, nor a limitation on the remedies, available to the United States to enforce the judgment.

b. Defendant's cooperation obligations include: (A) making payments to the Clerk for the upcoming fine as early as possible; (B) entering into an asset preservation agreement and/or payment plan with the government to preserve assets for payment of a fine and/or facilitate payment of a fine; (C) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the United States, within 10 days of the change of plea hearing and providing it to both the U.S. Attorney's Office and the U.S. Probation Office; (D) providing any documentation within his possession or control requested by the government regarding his financial condition; (E) not interfering with the United States' ability to file notice of Lis Pendens prior to judgment on any real property defendant owns either individually or jointly; (F) submitting to a financial deposition or interview (should the United States deem it necessary) prior to sentencing regarding the subject matter of said form (including making his financial advisor or accountant available for said financial deposition or interview); (G) fully and truthfully answering all questions regarding his past and present financial condition in such interview; and (H) providing a waiver allowing the U.S. Attorney's Office to access his credit report as well as a waiver for the past seven years of tax information held by the Internal Revenue Service.

c. Defendant agrees that he will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $10,000 before sentencing,

without the prior approval of the United States, excluding attorneys' fees incurred in connection with this criminal case.

    d.   Defendant authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office, and to share any information collected pursuant to this agreement with the U.S. Probation Office or the Court.

    e.   Defendant and the U.S. Attorney's Office agree that information provided by Defendant with respect to a criminal fine will be used to collect assets to satisfy Defendant's fine but it will not be used to otherwise enhance Defendant's sentence, in accordance with United States Sentencing Guidelines § 1B1.8. However, it is expressly understood that such information may be used by the government at sentencing to seek enhancement of Defendant's sentence if the government learns of information about Defendant's assets that is contradicted by the information provided by Defendant in accordance with Defendant's obligations under this paragraph.

    f.   Defendant agrees that failure to comply with any of the provisions in subparagraphs (a) through (e) above constitutes a material breach of the Plea Agreement.

6.    <u>Factual Basis of Guilt</u>.  Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

    a.   Defendant helped establish and operate COMPANY A, a business that was licensed in the State of Michigan for the purpose of seeking licenses to operate as

4

a medical marijuana provisioning center in the State of Michigan.  COMPANY A was not registered in Defendant's name.  Defendant also helped establish COMPANY B for the purpose of seeking the viability of operating as a digital currency platform for marijuana transactions in the State of Michigan.

b. From on or about May 26, 2017, to on or about April 30, 2019, Rick Vernon Johnson ("Johnson") was an agent of a State government or any agency of State government.  Specifically, during that time, Johnson was an appointed member and the Chairperson of the State of Michigan's Medical Marihuana Licensing Board (hereinafter, "MMLB"), which was supported by the Department of Licensing and Regulatory Affairs within the Executive Branch of state government.  Michigan Public Act 281 of 2016 provided that the MMLB had responsibility for implementing Michigan's new medical marijuana law and had the powers and duties to fully implement and administer the law.

c. Defendant gave (and aided and abetted giving) Johnson things of value while Johnson was a member and Chairperson of the MMLB.  Specifically, Defendant gave at least $68,200 in cash payments and other benefits to Johnson through COMPANY A and COMPANY B, including paying for Johnson's travel on two private chartered flights from Michigan to Canada on a Learjet 35 and King Air 200 aircraft.  At the time Defendant gave him those payments and benefits, COMPANY A was seeking licensing approval from the MMLB.

d. Defendant gave those cash payments and other benefits corruptly, that is, with the understanding that those cash payments and other benefits were offered and given to influence or reward Johnson in connection with his official duties as a member

and Chairperson of the MMLB. When Johnson agreed to accept, and accepted those cash payments and benefits, he conveyed to Defendant that he would provide him with information and assistance to help COMPANY A successfully apply for state medical marijuana operating licenses, that he would help expedite the review of COMPANY A's applications, and that he ultimately would support COMPANY A's license applications when he and the other members of the MMLB voted on those applications.

e. Defendant agrees that the business and series of transactions of the MMLB involving something of a value of $5,000 or more. Defendant agrees that the value of even one medical marijuana license to one company seeking to grow, process, test, transport, or sell marijuana between May 26, 2017 and April 30, 2019 greatly exceeded $5,000 because it would allow a business to operate in the State of Michigan in compliance with state law in what was a new and highly lucrative marijuana market.

f. COMPANY A's payments to Johnson were sent to JBJ Ranch, LLC and COMPANY B's payments to Johnson were sent to VM Enterprises, LLC and Common Cents Harvest Farms, LLC to help hide the fact that Defendant, COMPANY A, and COMPANY B were providing Johnson with cash payments while he was the Chairperson of the MMLB.

g. Johnson, while a member and Chair of the MMLB, and after he accepted things of value from Defendant, provided valuable non-public information about the anticipated rules and operation of the MMLB and assistance with license application matters to Defendant and COMPANY A.

    h. COMPANY A failed to disclose to the State of Michigan the conflict of interest and ex parte communications between Johnson and Defendant. Defendant further admits that COMPANY A falsely stated on its applications that it had no financial relationship with Johnson, and that Johnson did not correct those false statements before voting in favor of COMPANY A's applications.

    i. From in or about July 2018 through in or about April 2019, Johnson voted in favor of approving the prequalification status of COMPANY A and voted in favor of granting medical marijuana licenses to COMPANY A.

    j. Defendant agrees that the State of Michigan, in the one-year period before or after Defendant gave a thing of value to Johnson, received benefits of more than $10,000 from any federal program involving a grant, contract subsidy, loan, guarantee, insurance or other form of federal assistance. The State of Michigan receives billions of dollars annually from a variety of federal programs and other forms of assistance.

    k. Defendant agrees that the preceding statement of facts does not represent all facts and evidence known to the Defendant and the United States Attorney's Office that supports his guilty plea.

7. <u>Cooperation in Criminal Investigations</u>. Defendant agrees to fully cooperate with the Federal Bureau of Investigation, the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charges contained in the Felony Information, as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning

Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs.  Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity.  Defendant will not commit any criminal offense during the course of his cooperation with the United States.  Defendant will submit to polygraph examination(s) upon request.  Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

8. <u>Acceptance of Responsibility</u>.  The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines.  However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.  Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

9. <u>Non-Prosecution Agreement</u>.  The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against Defendant in the Western District of Michigan arising out of Defendant's bribery payments to Johnson provided that the

conduct is disclosed to the Government by Defendant or his attorney prior to the date of this agreement.  Defendant shall remain subject to prosecution for any criminal activity he has failed to disclose to the Government prior to the date of the agreement.  This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

10. Protection for Proffered/Cooperative Statements.  The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s).  It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

11. Possibility of Sentence Reduction Motions.   The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure.  Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others.  The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office.  Defendant fully understands that this paragraph is not a promise by the Government to file a

motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

12. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range. Both parties reserve the right to seek any sentence

10

within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

14. <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial.  At any trial, whether by jury or by the Court, Defendant would have had the following rights:

   a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

   b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

   c. The right to confront and cross-examine witnesses against Defendant.

   d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

   e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

   f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15. <u>Waiver of Other Rights</u>.

   a. <u>Waiver</u>.  In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or collaterally attack

>    Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.
>
>    b. <u>Exceptions</u>.  Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:
>
>    i. Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;
>
>    ii. Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;
>
>    iii. the district court incorrectly determined the Sentencing Guidelines range, if Defendant objected at sentencing on that basis;
>
>    iv. Defendant's sentence is above the Sentencing Guidelines range as determined by the court at sentencing and is unreasonable;
>
>    v. the guilty plea was involuntary or unknowing;
>
>    vi. an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

16. <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17. <u>Hyde Waiver.</u>  Defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

18. <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement.  Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

19. <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.  This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

20. <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  If the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement

ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

21. This is the Complete Agreement. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

22. Deadline for Acceptance of Agreement. If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by March 23, 2023, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

<u>Signature Page for Plea Agreement</u>

*United States of America v. John Dawood Dalaly*

                                    MARK A. TOTTEN
                                    United States Attorney

3/23/2023
Date
                                  CHRISTOPHER M. O'CONNOR
                                  CLAY STIFFLER
                                  Assistant United States Attorneys

      I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

3/17/2023
Date
                                  JOHN DAWOOD DALALY
                                  Defendant

      I am John Dawood Dalaly's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

3/17/2023
Date
                                  RAYMOND CASSAR
                                  Attorney for Defendant